IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH JAKIMOWICZ, | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | |
| CITY OF PHILADELPHIA, et al., | : | NO. 07-3327 |
| Defendants | : | |

**MEMORANDUM**

Ditter, J.                                                                   June 30, 2010

      This case comes before me on the defendants' motion for summary judgment. The plaintiff, Joseph Jakimowicz, alleges that he was constructively discharged from his position as a correctional officer for the City of Philadelphia Prison System ("PPS") after the defendants, the City of Philadelphia, Captain Cathy M. Talmadge, Lieutenant Deurward Spellman, and Lieutenant Jonathan Boston discriminated against him based on his race, in violation of Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act ("PHRA"). I find that there are no material facts in dispute and that the defendants are entitled to judgment as a matter of law. Therefore, I will grant the defendants' motion for summary judgment.

I.     Factual Background[1]

      The plaintiff is a white male who was employed by the City of Philadelphia in its prison system from July 28, 2003, to November 27, 2006. He was appointed Correctional Sergeant on June 26, 2006. Pursuant to the City's Civil Service Regulation 14.01, any employee who is

---

[1] These facts are taken from the parties' joint statement of undisputed facts.

1

appointed to a position from a promotional list is subject to a probationary period of six months. After beginning his probationary period, the plaintiff was issued a written warning on August 28, 2006, from Spellman, a black lieutenant with twenty-three years of work experience in the PPS, for using profanity towards an officer. In an unrelated incident, Spellman issued the plaintiff an Employee Violation Report on September 1, 2006, charging the plaintiff with failing to follow orders. Boston, a white lieutenant with seventeen years of work experience in the PPS, issued the plaintiff an Employee Violation Report on September 5, 2006, charging the plaintiff with failing to investigate a report of potentially lethal violence, ordering an inmate to be locked in his cell, and failing to search the inmate.

In a memorandum sent to Warden Adams dated September 19, 2006, Talmadge, a black captain with twenty-five years experience in the PPS, recommended that the plaintiff's promotion to Correctional Sergeant be cancelled and that he be returned to the position of Correctional Officer. The plaintiff's probationary promotion was set aside effective October 9, 2006. The plaintiff did not file a grievance or appeal the rejection of his promotion.

The plaintiff's last day of work was September 18, 2006, and he began a vacation on that day. On September 25, 2006, the plaintiff was involved in a motor vehicle accident and took a leave of absence from his employment with the PPS. In a letter dated November 27, 2006, the plaintiff submitted what he described as his "involuntary resign[ation]" from his position as Correctional Officer. In an appeal to the City's Civil Service Commission, he alleged that he was constructively discharged because it was necessary he resign to avoid the harassment he suffered from his superiors. The Commission found that the plaintiff did not carry his burden of proof

and denied his appeal. The plaintiff did not appeal the Commission's decision to the Court of Common Pleas.

II.     Procedural History

The plaintiff alleged eight separate counts against all defendants in his amended complaint and sought both compensatory and punitive damages. On the defendants' motion, I dismissed all of the plaintiff's claims, except for the plaintiff's Title VII race discrimination and retaliation claims against the City (Count I), the plaintiff's PHRA race discrimination claim against the City (Count II), and the plaintiff's First Amendment claim under section 1983 against all defendants (Count III). I also dismissed all claims for punitive damages. I granted the plaintiff leave to amend his PHRA claim against the individual defendants (Count II), and the plaintiff filed an amended complaint adding a sentence to Count II. After limited discovery, the defendants filed a motion for summary judgment on all the remaining counts.

III.    Parties' Contentions

The plaintiff contends that he was demoted and constructively discharged because of his race and in retaliation for complaints he made concerning the treatment of inmates. He contends that because of his race his supervisors treated other employees more favorably than they treated him. He alleges that Talmadge told him, "You whites ran this prison for a long time. Now we Blacks run it, and when I give you an order, no matter what it is, you will carry that out." The defendants contend that the plaintiff's promotion to Correctional Sergeant was rejected during his probationary period due to several instances of misconduct, not his race, and that the plaintiff

voluntarily resigned from his position as Correctional Officer. The defendants contend that even if the plaintiff was to establish that Talmadge made the alleged statement, the statement itself does not support an inference that the defendants took any action against the plaintiff because of his race.

IV.     Standard of Review

The standard for deciding a motion for summary judgment under Rule 56(c) of the Rules of Civil Procedure is well-established. I must consider all the facts and inferences in the light most favorable to the non-moving party. The moving party will prevail in its motion only if there is no issue of material fact and the moving party is entitled to a judgment as a matter of law. If a moving party demonstrates that no genuine issue of material fact exists, the non-moving party must set forth specific facts showing a genuine material issue for trial and may not rest upon the mere allegations or denial of its pleadings. I must deny the motion if there is a material fact in dispute such that a reasonable finder of fact could find for the non-moving party.

V.      Discussion

     A.      Race Discrimination Claim

The plaintiff alleges that because of his race the defendants discriminated against him in violation of Title VII and the Pennsylvania Human Relations Act in Counts I and II, respectively. The analysis under both statutes is the same "[b]ecause Pennsylvania courts have interpreted the [PHRA] interchangeably with Title VII." *Boles v. City of Philadelphia Water Dept.*, No. 06-1609, 2010 WL 2044473, at *1 n.2 (E.D. Pa. May 21, 2010) (citing *Weston v. Philadelphia*,

251 F.3d 420 n.3 (3d Cir. 2001)). Therefore, I will proceed with an analysis of the plaintiff's claim under Title VII, but my findings shall apply to the race discrimination claims in both Counts I and II.

Under Title VII, claims of discrimination, in the absence of direct evidence of racial discrimination,[2] are guided by the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Iadimarco v. Runyon*, 190 F.3d 151, 157 (3d Cir. 1999) (noting *McDonnell Douglas* test was created "to allow plaintiffs to proceed without direct proof of illegal discrimination where circumstances are such that common sense and social context suggest that discrimination has occurred").

Under *McDonnell Douglas*, the plaintiff must first establish a prima facie case of race discrimination by a preponderance of the evidence. To establish a prima facie case, the plaintiff must prove that (1) he is a member of a protected minority; (2) he was qualified for the position in question; (3) despite his qualifications, he suffered an adverse employment action; (4) under circumstances that give rise to an inference of unlawful discrimination. *See, e.g., Jones v. School Dist. of Philadelphia,* 198 F.3d 403, 410-11 (3d Cir. 1999). If the plaintiff is successful in making out a prima facie case of race discrimination, the burden shifts to the defendants "to articulate some legitimate, nondiscriminatory reason" for their action. *McDonnell Douglas Corp.*, 411 U.S. at 802-03. "Finally, should the defendant carry this burden, the plaintiff then must have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Jones*,

---

[2] After a thorough review of the parties' contentions and the record, I conclude that there is no direct evidence of racial discrimination.

198 F.3d at 410. With this framework in mind, I move on to analyze whether the parties carried their respective burdens.

1. The Plaintiff Failed to Establish a Prima Facie Case

The plaintiff bears the initial burden in establishing a prima facie case of race discrimination. Recognizing the flexibility within the prima facie case requirements,[3] the U.S. Supreme Court has held,

> The importance of *McDonnell Douglas* lies, not in its specification of the discrete elements of proof there required, but in its recognition of the general principle that any Title VII plaintiff must carry the initial burden of offering *evidence adequate to create an inference* that an employment decision was based on a discriminatory criterion illegal under the Act.

*Int'l Broth. of Teamsters v. U.S.*, 431 U.S. 324, 358 (1977) (emphasis added).

In *Iadimarco v. Runyon*, the Third Circuit recognized the need to adapt the first prong of the prima facie test in reverse discrimination cases.[4] In lieu of requiring a plaintiff to show he or she belongs to a protected group, the court held:

> [A]ll that should be required to establish a prima facie case in the context of "reverse discrimination" is for the plaintiff to present sufficient evidence to allow a fact finder to conclude that the employer is treating some people less favorably than others based upon a trait that is protected under Title VII.

*Iadimarco*, 190 F.3d at 161. The court went on to conclude that sufficient evidence must be

---

[3] *See McDonnell Douglas Corp.*, 411 U.S. at 802 n.13 ("The facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations.")

[4] The *Iadimarco* court rejected the approach taken by most courts of appeals with respect to the first prong of the prima facie case method. That approach required "plaintiffs to present evidence of 'background circumstances' that establish that the defendant is 'that unusual employer who discriminates against the majority' instead of showing minority group status." *Iadimarco*, 190 F.3d at 158 (quoting *Parker v. Baltimore & O. R. Co.*, 652 F.2d 1012, 1017 (D.C. Cir. 1981)). The court rejected the approach because it forces the introduction of evidence that should be reserved for the third stage of the framework, the "background circumstances" concept is "vague and ill-defined," it may raise the evidentiary bar too high for plaintiffs since the concept may include the employer's background, and may cause jury confusion. *Id.* at 161-63.

presented "to allow a reasonable fact finder to conclude (given the totality of the circumstances) that the defendant treated the plaintiff 'less favorably than others because of [] race, color, religion, sex, or national origin.'" *Id.* at 163 (quoting *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 577 (1978)).

Here, the plaintiff has failed to establish a prima facie case of race discrimination; he has not demonstrated that because he was white he was treated less favorably than other probationary Correctional Sergeants. For example, the plaintiff has offered no evidence that non-white Correctional Sergeants, or even other employees within the PPS, were not subject to adverse employment action after receiving multiple violation reports. *See Flagg v. Control Data,* 806 F. Supp. 1218, 1223 (E.D. Pa. 1992) (holding the plaintiff, a black male field technician, failed to establish a prima facie case because he failed to show "that a white male field technician had his driver's license suspended and was not terminated"). In his amended complaint, the plaintiff contends that he was continually harassed by his black supervisors with respect to minor violations that were not enforced against black correctional officers and sergeants, but he has failed to point to any specifics in the record to support these contentions. The defendants correctly note that the plaintiff has put forth no evidence regarding individuals similarly situated to him or any evidence that such individuals were treated more favorably than he was. The record is simply devoid of any evidence to support the plaintiff's contentions.

The plaintiff even testified by deposition that he does not believe either Boston or Spellman is prejudiced against white people and that he has not witnessed Boston, Spellman, or Talmadge treat white employees differently than black employees. (Joint Statement of

7

Undisputed Facts ¶¶ 30-32, 37.) Thus, he has failed to establish a prima facie case because there is no evidence to show he was treated less favorably because of his race.[5]

It follows that the motion for summary judgment must be granted. Nonetheless, I will continue to analyze the motion under both the second and third burden shifts of the *McDonnell Douglas* framework. As will be discussed below, even if the plaintiff had succeeded in establishing a prima facie case, the defendants have articulated legitimate, nondiscriminatory reasons for their actions, and the plaintiff has failed to prove such reasons were merely a pretext for discrimination.

        2.        The Defendants Articulated Legitimate, Non-Discriminatory Reasons For Their Adverse Employment Action

After the prima facie stage, the burden then shifts to the employer to offer some legitimate, non-discriminatory reason for their adverse employment action. Here, even if the plaintiff had established a prima facie case, the defendants have presented sufficient evidence to meet their light burden.[6]

The plaintiff, while in a six-month probationary period as Correctional Sergeant, was subject to Philadelphia Civil Service Regulation 14.04, which provides that an employee may be discharged or demoted during the probationary period if it is determined "that such employee is

---

[5] The plaintiff presented evidence on the second prong of the prima facie case that he was qualified for the Correctional Sergeant position (this assumes that he remained qualified after the warnings and violation reports leading up to the rejection). This is true for the third prong as well: he suffered an adverse employment action. As for the fourth prong, I note that the plaintiff has offered no evidence as to who, if anyone, filled the position of Correctional Sergeant after the plaintiff was rejected or any other evidence that would permit an inference of unlawful discrimination. Nonetheless, the plaintiff failed to carry his burden at the prima facie stage, because he did not show that he was treated less favorably because of his race.

[6] *See Fuentes*, 32 F.3d at 763 ("The employer need not prove that the tendered reason actually motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff." (citing *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 254, 256 (1981))).

unable or unwilling to perform his/her duties satisfactorily, or that his/her habits and dependability do not merit his/her continuance in the city service." Here, the plaintiff during his probationary period was issued a warning by Spellman and violation reports by both Spellman and Boston. (Joint Statement ¶¶ 12-15, 17.) Moreover, Talmadge cited insubordination, untruthfulness, a lack of professionalism, and poor demeanor in her memorandum to Warden Adams. (Joint Statement Ex. 15.)

Accordingly, the defendants have presented sufficient evidence to articulate some legitimate, nondiscriminatory reason for rejecting the plaintiff's promotion to Correctional Sergeant during his probationary period.

### 3. The Plaintiff Failed to Prove the Defendants' Reasons Were a Pretext For Discrimination

Since the employer tendered sufficient justification for their actions, the burden shifts back to the plaintiff to rebut that evidence. He must refer to evidence that would show the employer's so-called justification was a mere pretext for discrimination.

"[T]o avoid summary judgment, a plaintiff's evidence rebutting an employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons . . . was either a *post hoc* fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." *Fuentes*, 32 F.3d at 764 (internal citations and quotations omitted). Thus, evidence must lead a reasonable fact-finder to either "(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative

cause of the employer's action." *Id.* In making this contention:

> [the plaintiff] must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence. In simpler terms, he must show, not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason.

*Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108-09 (3d Cir. 1997) (internal citations and quotations omitted). With this standard in mind, I find that even if the plaintiff had established a prima facie case, the plaintiff has failed to offer sufficient evidence from which a reasonable fact-finder could find that the defendants' proffered reasons were merely a discriminatory pretext.

The plaintiff alleges that the warning and violation reports issued to him by his supervisors contained false information and were motivated by race. (Am. Compl. ¶¶ 16-17.) As I have already pointed out, however, the plaintiff testified he does not believe either Spellman or Boston was prejudiced, and no evidence exists regarding Talmadge's treatment of white employees. Considering that the plaintiff has not pointed to any evidence in the record supporting the allegation that the warnings and violation reports were fabricated, the plaintiff cannot avoid summary judgment under a theory that they were. *See Jones*, 198 F.3d at 414 (affirming summary judgment under rationale that plaintiff made "numerous allegations in his affidavit which he predicates on nothing more than his beliefs without having actual knowledge of them" and most of them are simply not supported). The record is replete with corroboration of the evidence with respect to the circumstances leading to the warning and Employee Violation Reports. (*See, e.g.*, Aff. of Steven R. Liller; Aff. of Rodney Jones; Aff. of Mahendra Merai; Aff.

of Carlton Redd.)[7] The plaintiff has simply failed to demonstrate weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons to show that such reasons are plainly wrong.

The foundation of the plaintiff's argument, it seems, rests with Talmadge's statement regarding the racial composition of the prison as evidence that his rejection was in fact racially motivated. The plaintiff's own non-corroborated testimony is the only evidence to support the allegation that Talmadge stated, "You whites ran this prison for a long time. Now we Blacks run it, and when I give you an order, no matter what it is, you will carry that out."

Nevertheless, the statement, assuming it was made, does not create an inference that the plaintiff was demoted because of his race. The remark bears no relation to the warden's decision to reject the adequacy of the plaintiff's performance during his probationary period. "Stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision." *Ezold v. Wolf, Block, Schorr and Solis-Cohen*, 983 F.2d 509, 545 (3d Cir. 1992). Although Talmadge did note in the plaintiff's two-month performance report that continued unprofessional conduct would not be tolerated, Talmadge herself never issued the plaintiff any type of warning or violation report. (Pl.'s Opp'n Br., Ex. E.)

Moreover, the *Iadimarco* court stated, "Although the race and/or gender of the individual(s) responsible for a hiring decision is certainly relevant, it is insufficient to establish a prima facie case of discrimination without more." *Iadimarco*, 190 F.3d at 156. Talmadge did

---

[7] The affidavits can be found in Exhibits 14-17, respectively, attached to Memorandum of Law in Support of Motion for Summary Judgment of Defendants.

11

not even have the authority to cancel the plaintiff's promotion. She merely recommended to the warden that such action be taken; he in turn needed to gain approval. The ultimate decision to reject the plaintiff's promotion came from the Deputy Director of Human Resources, a white female.

The plaintiff cites the satisfactory two-month evaluation prepared by Talmadge, along with "a glowing letter of recommendation" from the Commissioner of the PPS, Leon King, as countervailing evidence that raises an inference of racial motivation. (Pl.'s Opp'n Br. 4.) However, in the performance evaluation, Talmadge described the delicate situation that the plaintiff had created for himself. She wrote, "[Y]ou have been disciplined on several occasions for unprofessional conduct as well as other deviations from policy. I'm sure that you are fully aware that conduct unbecoming a Correctional Sergeant will not be tolerated." (Pl's Opp'n Br., Ex. E.) With respect to Mr. King's "glowing letter," a review of its content reveals that it falls short of such a claim. The letter states that the plaintiff has "operational knowledge" of the PPS and is considered a "key employee." It also merely conveys the purpose behind transferring the plaintiff to another facility to gain additional experience.

The ultimate test in employment discrimination cases is whether discriminatory animus was a motivating factor in causing the adverse employment action. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 95 (2003). The plaintiff has not offered any evidence from which a reasonable fact-finder could find that such animus was a motiving factor in reaching the conclusion that his conduct was unsatisfactory during his probationary period. Therefore, the defendants' motion for summary judgment on the plaintiff's race discrimination claims under Title VII and the PHRA must be granted.

B. Retaliation Claim

The plaintiff also alleges that his promotion to Correctional Sergeant was rejected and he was constructively discharged in retaliation for complaints he made. However, this claim also fails because the plaintiff has presented no evidence to support it.

The *McDonnell Douglas* framework applies to retaliation claims under a pretext theory just as it does for claims of discrimination. *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir. 1997). Thus, a plaintiff first must establish a prima facie case of retaliation by showing:

> (1) [he] engaged in conduct protected by Title VII; (2) after or contemporaneous with engaging in that conduct, [his] employer took an adverse action against [him]; (3) the adverse action was "materially adverse"; and (4) there was a causal connection between [his] participation in the protected activity and the adverse employment action.

*Hare v. Potter*, 220 Fed. Appx. 120, 128 (3d Cir. 2007). Beyond this stage, the defendant and the plaintiff bear the same burdens as in discrimination claims. *Woodson*, 109 F.3d at 920 n.2.

"The first prong of a Title VII retaliation claim requires, at minimum, an informal protest of discriminatory employment practices. Accordingly, a generalized complaint of unfairness will not suffice. The plaintiff must oppose a practice made unlawful under the applicable statute." *Ladd v. The Boeing Co.*, No. 06-28, 2008 WL 375725, at *12 (E.D. Pa. February 08, 2008) (citing *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995)). The plaintiff's amended complaint states that he "complained to his superiors about various policies and procedures that were being perpetrated upon the inmates" that he believed were "illegal, immoral, and unethical." (Am. Compl. ¶¶ 14-16.) The plaintiff produced no evidence regarding what specific policies and procedures were unlawful or what made them unlawful. He only alleged generally that they violated the civil rights of inmates. The record does not reveal any evidence to support these

13

contentions. Moreover, the parties agree that the plaintiff did not make any complaints regarding the treatment of prisoners to anyone at the PPS and that any sanitation reports completed by the plaintiff were ordered by the defendants and were not complaints about the treatment of prisoners. (Joint Statement ¶¶ 39-41.) Therefore, the plaintiff has failed to establish a prima facie case of retaliation because he was not engaged in a protected activity.[8]

VI.    Conclusion

Having found that no reasonable fact-finder could conclude that: (1) the plaintiff was rejected for promotion during his probationary period based on his race; (2) the plaintiff was retaliated against; or (3) the defendants violated the plaintiff's First Amendment right to freedom of speech,[9] I must grant the defendants' motion for summary judgment.

An appropriate order follows.

---

[8] The plaintiff has also failed to satisfy the fourth prong in the prima facie stage because he presented no evidence whatsoever linking his activity with an adverse employment action.

[9] Neither party has briefed the plaintiff's First Amendment claim under § 1983 (Count III). Nevertheless, the plaintiff's speech here appears to have been made during the course of his official duties as a public employee, and therefore it is not protected by the First Amendment and he is not insulated from adverse employment action by the PPS because of those comments. *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). Even if the plaintiff spoke as a citizen on a matter of public concern, the PPS "had an adequate justification for treating the employee differently from any other member of the general public." *Id*. at 418. The evidence in this case, introduced above in the discussions of the plaintiff's other claims, demonstrates that the PPS had legitimate, non-discriminatory reasons for rejecting the plaintiff's promotion, and the plaintiff has failed to present any evidence showing that an issue of material fact remains with regard to this claim. Therefore, I must grant the defendants' motion for summary judgment with respect to Count III.